IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DENISE CELAYA,<br><br>　　　　Plaintiff,<br><br>v.<br><br>UNIVERSITY OF UTAH, UNIVERSITY OF UTAH HEALTH CARE, and UNIVERSITY OF UTAH HOSPITALS AND CLINICS,<br><br>　　　　Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:23-cv-00116-JNP-CMR<br><br>District Judge Jill N. Parrish |

　　　　After about eight years on the job working as a full-time pharmacy technician, Plaintiff Denise Celaya developed a medical condition requiring that she work reduced hours. Her employer, Defendant University of Utah, accommodated her request for a part-time schedule for several months even though she was technically a full-time, benefited employee. As busy season approached and Celaya's condition showed no signs of improving, however, the University determined that it could not continue offering the part-time accommodation and asked her to consider a permanent part-time position. Since part-time positions did not provide medical insurance, Celaya declined the offer and opted to take unpaid medical leave so she could continue her insurance coverage for a few months. When her medical leave ended and she had supplied no documentation clearing her to return to work, the University terminated her employment.

　　　　Celaya sued the University under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act of 1973 for failure to accommodate her disability; discrimination on the basis

of her disability; and retaliation for engaging in protected activity. She also brought a claim for breach of contract. The parties engaged in discovery, and before the court now is Defendants' motion for summary judgment on all claims. Because Celaya's opposition to the motion fails to point out any genuine dispute of material fact and because her claims cannot succeed on the undisputed facts, the court grants Defendants' motion in full.

## BACKGROUND

Denise Celaya began working full time as a pharmacy technician at the University of Utah's Redwood Pharmacy in 2014. About eight years later, in April 2022, Celaya was diagnosed with a severe medical condition and requested continuous leave. The University granted her request through the beginning of May. After returning from continuous leave, Celaya and her doctor requested a part-time work schedule through the end of May, which the University approved and later extended through mid-July. Sometime in July, Celaya and her doctor requested additional intermittent leave through the end of October. The University granted Celaya's request through mid-September and later extended it through mid-October.

When Celaya and her doctor requested that her part-time schedule continue through the end of December, the University denied the request because providing a full-time employee a part-time schedule had become unfeasible with staffing shortages and longer wait times for customers. The university pharmacy—which was already short staffed—tended to be busier during the fall season due to the flu and the availability of new COVID-19 booster shots. Further, since Celaya's condition was not showing any signs of improvement, it was not clear how much longer she would need the part-time accommodation. The University offered her reassignment to a part-time position, but Celaya indicated that she would not accept it because that position would not provide her medical insurance. Celaya did, however, accept the University's suggestion of an unpaid

medical leave of absence that would allow her to retain her insurance coverage during the period of her absence. The University also asked Celaya to send an updated resume and a few requisition numbers for job openings for which she thought she might be qualified, but Celaya did not do so.

Celaya's unpaid medical leave was originally scheduled to conclude at the end of December, but the University extended it through the end of April 2023 upon her doctor's request. The leave agreement specified that Celaya would need to provide a medical release to return to work. Celaya's condition still had not improved by April, so she was unable to obtain a medical release. Soon after her medical leave expired, the University terminated her employment. Even before the University terminated her employment, Celaya had filed her federal lawsuit, claiming that the University unlawfully denied her request to continue her part-time schedule through the end of December 2022 and ended her full-time employment.

## DISCUSSION

When a party moves for summary judgment, "[t]he court shall grant [the motion] if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if the dispute over it "might affect the outcome of the suit under the governing law," and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Once the moving party satisfies its burden of demonstrating the absence of a genuine issue of material fact, the burden shifts to the non-moving party to show that genuine factual issues remain for trial. *Id.* at 256.

Rule 56(c) requires that the parties support their assertions about whether a fact is or is not genuinely disputed by "citing to particular parts of materials in the record," such as "depositions, documents, electronically stored information, [and] affidavits or declarations." FED. R. CIV. P.

56(c). Defendants' motion provides extensive citations to support every factual assertion. Celaya's opposition, by contrast, cites record materials only sparingly. Because Celaya's opposition in numerous places does not satisfy the requirements of Rule 56(c), the court treats as undisputed every factual assertion in Defendants' motion for which Celaya does not provide a countervailing citation. *See, e.g.*, ECF No. 35 ("Opposition"), at 12 (failing to cite any record materials to dispute factual assertion number 20).

As noted above, Celaya brought four claims against Defendants: failure to accommodate, discrimination, and retaliation under the ADA and Rehabilitation Act, plus common-law breach of contract. Defendants moved for summary judgment on all claims, arguing in part that Eleventh Amendment immunity shields them from all the ADA claims.

The Eleventh Amendment "bars suits against [S]tates in federal court." *Sutton v. Utah State Sch. for the Deaf and Blind*, 173 F.3d 1226, 1231–32 (10th Cir. 1999). And Defendants—the University of Utah and its entities—are an "arm of the [S]tate [of Utah] entitled to Eleventh Amendment immunity." *Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 577 (10th Cir. 1996). In her opposition, Celaya concedes this point. Thus, the court grants summary judgment for Defendants on Celaya's claims of failure to accommodate, discrimination, and retaliation under the ADA.

Celaya also concedes her claims of retaliation, so the court also grants summary judgment for Defendants on the claim of retaliation under the Rehabilitation Act. That leaves her claims of failure to accommodate under the Rehabilitation Act, discrimination under the Rehabilitation Act,

and breach of contract.[1] Although failure to accommodate is itself a form a discrimination (since the failure to accommodate is one kind of adverse action), the court considers Celaya's claim of failure to accommodate and her claim of discrimination based on her termination as distinct claims.[2]

The Rehabilitation Act requires covered employers "to provide reasonable accommodations to disabled employees." *Sanchez v. U.S. Dep't of Energy*, 870 F.3d 1185, 1195 (10th Cir. 2017) (internal quotation marks omitted). To succeed on a claim of failure to accommodate under the Rehabilitation Act, a plaintiff must prove that she (1) was disabled; (2) was otherwise qualified for the job; and (3) requested a plausibly reasonable accommodation.[3] *Brown v. Austin*, 13 F.4th 1079, 1084–85 (10th Cir. 2021). The Rehabilitation Act also prohibits covered employers from discriminating (taking adverse action) against otherwise qualified individuals because of their disabilities. 29 U.S.C. § 794(a). The elements a plaintiff must prove to succeed on a claim of discrimination by wrongful termination are similar: she must prove that she (1) was disabled; (2) was otherwise qualified for the job; and (3) was terminated from her

---

[1] The Rehabilitation Act applies to federal agencies, federal contractors, and entities receiving federal funding. *Dutton v. Johnson Cnty. Bd. of Cnty. Comm'rs*, 859 F. Supp. 498, 504 (D. Kan. 1994). Although the record does not say, the University presumably receives federal funding, and Defendants accordingly do not contest that they are covered by the Act.

[2] The Rehabilitation Act largely borrows the legal standards for discrimination from the ADA, 29 U.S.C. § 794(d); *Cline v. Clinical Perfusion Sys., Inc.*, 92 F.4th 926, 931 (10th Cir. 2024), and the ADA defines discrimination to include the failure to make reasonable accommodations, 42 U.S.C. § 12112(b)(5)(A).

[3] If the plaintiff successfully proves these elements, then the burden shifts to the employer to prove that the accommodation requested "imposes an undue hardship on its business." *Sanchez v. U.S. Dep't of Energy*, 870 F.3d 1185, 1195 (10th Cir. 2017) (internal quotation marks omitted).

employment because of her disability.[4] The parties do not dispute that Celaya is disabled and thus satisfies the first element of both claims.

To be otherwise qualified, a necessary element under either claim, a plaintiff must prove that she can perform the essential functions of the job, with or without a reasonable accommodation. *See Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1118 (10th Cir. 2004). Defendants argue that Celaya cannot point to any evidence that she was otherwise qualified for the full-time pharmacy-technician position after April 2022.

The court agrees. One of the essential functions of a full-time pharmacy technician at Redwood is working a full-time schedule in-person on a permanent basis. ECF 29-5 ("Jacquez Decl."), at 2; *see Mason*, 357 F.3d at 1119–20 (recognizing that physical attendance in the workplace is an essential function of most jobs). Celaya does not dispute this fact, and she admits that she could not work a full-time schedule at that point, even with other reasonable accommodations like being excused from lifting heavy objects. The accommodation that she sought—working a part-time schedule indefinitely—was not reasonable considering that one of the essential functions of her job was working full time.[5] *Freeman v. City of Cheyenne*, No. 23-

---

[4] Causation under the Rehabilitation Act is sole causation (unlike under the ADA, which requires only but-for causation). *See Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1313 (10th Cir. 2021). In any event, if the plaintiff successfully proves these elements, then the burden shifts to the employer to "articulate a nondiscriminatory reason for its conduct." *Cummings v. Norton*, 393 F.3d 1186, 1189 (10th Cir. 2005).

[5] Celaya argues that she did not seek to work part-time indefinitely; in her view, all she requested was a part-time schedule through the end of December 2022, which was reasonable especially considering that the University managed to accommodate her part-time work request through mid-October. In context, however, her request for intermittent leave through the end of December was effectively one for indefinite intermittent leave. Celaya could not work full-time after April 2022, and her condition showed no signs of improvement. The University had already accommodated multiple requests for intermittent leave, managing with a short-staffed pharmacy through mid-

8022, 2024 WL 464069, at *7 (10th Cir. Feb. 7, 2024); *Green v. BakeMake USA, LLC*, 683 F. App'x 486, 491–92 (6th Cir. 2017). Thus, she cannot point to any evidence that she was otherwise qualified for the full-time pharmacy-technician position. (And even if she could show that she was otherwise qualified, she cannot show that she requested a plausibly reasonable accommodation because once again, a part-time accommodation is not reasonable for a full-time position.) Accordingly, neither her failure-to-accommodate claim nor her discrimination claim can survive summary judgment.

On the breach-of-contract claim, Celaya does not oppose Defendants' motion for summary judgment. But just because Celaya does not oppose Defendants' motion on this claim does not mean that the court can grant it outright. *Reed v. Bennett*, 312 F.3d 1190, 1194–95 (10th Cir. 2002). It remains the court's role "to ascertain whether the moving party has sufficient basis for judgment as a matter of law." *United States v. Dawes*, 344 F. Supp. 2d 715, 718 (D. Kan. 2004). Celaya's complaint alleges a breach of Defendants' own policies, which commit to providing university employees accommodations under the Rehabilitation Act. Even assuming that a valid contract exists based on the University's policies, Celaya's claim must fail because she cannot point to any evidence that Defendants violated the requirements of the Rehabilitation Act. As explained above, one of the elements of a Rehabilitation Act claim is that the plaintiff must show herself to be otherwise qualified for the job, and Celaya cannot show that she was otherwise qualified for the job of a full-time pharmacy technician after April 2022. Celaya gives no other basis for finding

---

October. The University had no reason to believe at that point that Celaya would be able to return to full-time work in January 2023.

that Defendants violated their own policies, so the court must conclude that Defendants are entitled to judgment as a matter of law on her breach-of-contract claim as well.

Based on the evidence in the record, the University went above and beyond to accommodate Celaya's disability. For months, the University endured staff shortages and other workplace inconveniences to ensure that Celaya could take some time off to recover. Only when it could no longer accommodate her part-time-schedule requests did the University end her full-time employment. Even then, the University offered her a part-time position, which Celaya declined. After all that the University did for her, Celaya cannot succeed with her lawsuit.

## CONCLUSION AND ORDER

For the reasons above, the court **GRANTS** Defendants' motion for summary judgment in full.

Signed January 10, 2025.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge